Good morning, Your Honors, and may it please the Court, I'm Paul Steiner, and I'm here representing Appellant Orville Meaux, and he pronounces it Meaux just for the Meaux. I appreciate it. Thank you. Your Honors, if I might address first the issue of the denial of the Rule 60 motion to vacate, which is, I believe, governed under an abuse of discretion standard, what I'd like to do is to give what at least is our view of why this is quite distinguishable from even the cases that were cited by the Court and by ourselves down below. This is a case in which Mr. Meaux was represented by prior counsel for not one case, not even two cases or three cases, but in four separate matters over a period of four years. And over that period of four years, the four separate matters, by the way, constitutes three cases filed in the District Court, and we'll refer to them as the 04, 05, and 09 case for the years in which they were filed, but also a grievance proceeding that took place in Minnesota with regard to the dismissal of him from his position and his demotion. What is unique, I think, about this case is that in all four of these proceedings, not once did counsel obtain a positive result, not once, not a single ruling. I'm not sure this is leading you anywhere, because ordinarily the remedy for attorney incompetence, if that's what we're talking about here, is an action against the attorney, not a do-over of the litigation. I understand, Your Honor. And what we're saying here is that what we have is more than merely the gross negligence, which is the term that we have. All of which bolsters the claim against the prior attorney. I understand. I don't know what it has to do with Northwest Airlines. What we have is a total loss of a collapse of the adversarial system. There was no adversarial system involved here. But we have But Northwest Airlines was involved in litigation for years. We are not talking about the failure or the permission of a default judgment where not much has happened. We've had years of activity here. I don't know of any case that says, oops, bad lawyer, you get a do-over. Is there any authority you can cite to me that would suggest a different result? Yes, I think I can. And I think that the Court The only cases I've seen are the default judgment cases. Correct. Well, that's not this case, because this case has years of litigation. This case is not dropping the ball at the very beginning. And I would argue, Your Honor, that the fact that it was default in those cases which the Court has sought, and it has only been in the default cases, I believe the Court is correct in that. But the fact of default in and of itself shouldn't be the linchpin. The question is, was there a real adversarial system in play? Well, do you have any authority for that? I mean, we have to follow, you know, precedent, and I just don't know how this Let me just finish, please, please, why this case isn't different from Latshaw. If maybe you can distinguish it from Latshaw, because I will try. I think – I don't think Latshaw is the proper case. I think it's Lau that's the proper case that really applies here. And the reason for it is this. In Latshaw, the appellant agreed to a settlement. And said she was misadvised and sought relief. In Mewkes, he agreed to do certain things, dismiss various claims and things of that nature, but those were under coercion. That's what's the uncontroverted rule. What was under coercion? The fact that he came to agreement and allowed for the dismissal of the claims. The record below shows that he had meeting after meeting after meeting with his counsel, and he would take a position and they would essentially, if I might, this may be a little bit of an overstatement, almost browbeat him for a 7-hour meeting before he came to the conclusion, I'll go, I'll concede to the client. A great claim against the attorney. Agreed, agreed. But what we do have, and why I think Lowe is more appropriate than Latshaw, in Lowe they gave relief. It was a default case. But we have essentially the same thing. We have the default. After years and years of litigation. Of litigation that went nowhere. And why does that? Is that Northwest's fault? Why should Northwest have to face this all over again? Why should they? Because there was, they. They weren't responsible for your client hiring an incompetent attorney. That I'll concede. They weren't responsible for anything with regard to the litigation. And we have no proof that they were actually responsible for the allegations because we don't have any finding that in fact they were at fault as alleged. So I'm not sure, I mean, it seems to me this is an invitation for a do-over with every unhappy litigant who thinks his attorney screwed up a case. And we're not going there. I understand what you're saying. And I understand that's been the Court's reluctance in many of the cases. But when you look at the totality of what has happened here, it really, I think, and to answer the prior question, is there any precedent for it, I think it really is akin to the criminal law that says the incompetence of counsel, it is akin to the incompetence of counsel, is a reason for a do-over, if you will. And why is it akin? Granted, there's a difference. In criminal law, the Constitution says that you're entitled to counsel, the advice of counsel. It doesn't say competent counsel. I believe that's the way the- Effective counsel. That's the way the Constitution provision has been interpreted. That's the whole difference. That's the point, Your Honor. The right to counsel means, you know, the effective assistance of counsel. And that was a Supreme Court decision that said effective. But there's no such right in the civil case. But what we are dealing with here is a matter where Mr. Mewkes is seeking to have his constitutional rights protected. He was discriminated against according to his claim for a race-based claim. So we are pursuing a race-based claim. And is that really any less worthy of protection than, say, a regular criminal who is charged with burglary or something of that nature? Is that any lesser – should there be a lesser standard applied? And that's really what we're saying. And when you look at the totality of what went on here, never did the counsel provide adequate representation. Why? Time after time, the Court down below said, what you've done is contrary to what we've told you to do. And they – and she spelled it out time after time in terms of what to do. They filed a – an 05 case. That was claim-splitting, and they never responded to claim-splitting when they could have gone back to amend. They filed an 09 case, and that was found out to be barred because there had been a prior bankruptcy – a prior bankruptcy stay. If I may ask a question, not on the record, I'm just curious. I'm sure you know the answer. Does the former attorney have E&O insurance? Yes. Are you pursuing it? Yes. But that's not a full remedy. But no result yet? No. No. But – and it's not a full remedy. For instance, one of the – one of the things sought in this – in this litigation had been reinstatement. You can't get reinstatement under malpractice insurance coverage. The benefits, you can translate them to some degree in terms of what – what it is. But how do you get free air passage, which airline employees are entitled to? How do you get the – you might be able to get an economic equivalency of that, but you don't really get the full response. But I'd like to come back to one other thing. Money damages are the solution courts have to offer to all sorts of injuries. And what if you have inadequate coverage? It's your client who hired that lawyer. True. He could have inquired as to coverage. But it's true also, Your Honor, in the criminal case. The criminal lawyers characterize – I got to tell you, that analogy is such a stretch that for me, you're really wasting your time. Okay. Well, I – I understand, but that's – that's my pitch, if you will. And, you know, you play the hand – the cards you get. That's true. I don't fault you. I just got to tell you, that argument's not going anyplace with me. What's your next best argument? With regard to Rule 60? With regard to anything. With regard, then, to the question about having to do with the dismissal and with regard to this refusal to grant continuance on the summary judgment motion, if I might. With regard to that, when the Court made the ruling, it granted in part and denied in part the summary judgment ruling. It – it granted the ruling on all issues, but denied it on one. It said that there was sufficient evidence to establish that there was at least a triable issue as to whether or not the level one demotion was a – had – was discrimination – was discriminatory or had some – some bias to it. And therefore, that case – that particular issue could go forward. The others were denied. However – But before you even get to the substance of that, let me just ask you, because you made a single-sentence argument concerning the District Court's handling of your discriminatory termination claim in the section of your – your brief addressing the continuance argument with no citation to the record or to authority, and I'm just trying to figure out why we shouldn't consider this sort of made in passing argument waived. Because we weren't making it as a substantive argument at all. We were making it as a procedural argument. We were saying that the procedure followed by the Court was wrong. And that was – that was laid out in the – in the issues presented. We weren't saying that the Court itself on its substance was wrong, but procedurally it was wrong. What the Court should have done, we argue, is that it should have taken the claims that had been filed in other cases and consolidated them rather than dismissing them. And what we have here is a situation where the – the continuation that was requested on the summary judgment was – goes to the very, very substance of why they couldn't present the evidence on which you – it was a self-fulfilling prophecy. They didn't have the evidence to present. They said that we need this additional continuation. We need the additional discovery. And they laid out seven different items as to why. And that we cannot respond. So when the Court then said, well, you didn't respond to this or you didn't have adequate evidence, that was – at least goes back to whether they had the discovery that they were allowed or not. What the Court relied upon and what the – what the defense was able to do – I'm sorry, what the prosecution was able to do, the plaintiff down below, was able to take the deposition of the two employees of Northwest. Well, the Court relied on the two employees of Northwest, but there were other witnesses which were identified specifically in the request for continuance that could have had a serious bearing. They were able to – But you had plenty of time. The counsel had plenty of time to do that. Well, recall, Northwest, very quickly after the summary judgment motion was filed, filed for bankruptcy. So it sat for – Well, before it filed for bankruptcy, there was a motion for summary judgment filed by Northwest after a period, I think, of about six months. So there was some sort of disclosures. While the bankruptcy case was proceeding, I believe, there was mediation that took place. There were depositions taken at that point of some of the key people who were involved here. Right. Post the bankruptcy hold being lifted, you had ample opportunity and did exchange a number of documents and also could have deposed people from that point of view. You say that they were involved in four or three other lawsuits at that point. Subsequently filed. Well, but within – some of those, I believe, overlapped, at least one of them did. Well, they all overlapped, the 2004 case, because it continued to – it was closed and then reopened. Okay. So I just – I'm finding that – I'm trying to figure out where is it that you didn't have enough time or wherewithal or resources to conduct your discovery? Well – To do those depositions. And in the affidavit that was submitted, there weren't specific facts that were required under the rule. Well, the rule didn't require a motion, as counsel has argued, I believe. I think it was raised properly in terms – I'm talking about the request for continuance. Right. If you could explain to me how counsel's declaration evidenced a specific request for a motion, I think you would have more time to uncover specific facts that just wasn't there. Well, for instance, and I see that my time is running out quickly, he asked to locate certain named witnesses. He got no union help. That was one of the – But I think what Judge McGee is saying is he asked to say what specific facts that would affect the motion that he hoped to discover. Yes. Well, I think he did. He indicated that the – for instance, the witnesses would be able to controvert what the employees of Northwest were saying in terms of what the procedures followed in Northwest were. Recall there was this letter, which was a signature feature of what the termination took place or the firing took place about. There was a major dispute as to who – whether or not Mr. Mewkes was instructed or authorized to send that letter. They were able to come up with one witness, but there were others that they identified that they wanted to find. They did not – were not able to locate them. They did not have the assistance that they normally would have of the union itself. It went out of business, the main union, and then there were subsequent unions who just wouldn't step up to the plate. So he was – he was stymied in what you normally would follow in terms of the processes. Roberts. You're over time. We'll give you a minute for rebuttal. I appreciate that. No more than a minute. And I will take no questions. Thank you. Good morning, Your Honors. If it please the Court, Linda Goldman on behalf of Respondent Northwest Airlines. There are three issues on this appeal, and I'm going to start with the one that the Mr. Muchs concedes that 60B relief is an abuse of discretion standard, that it can be granted only in extraordinary circumstances where the matter is beyond his control and where there's gross negligence of counsel. In this instance, the Latshaw case decides the matter. There is no distinction. Latshaw herself claimed that she was defrauded by her counsel, that there was pressure put on her, similar to what Mr. Muchs is claiming, and that her counsel threatened to resign. The ineffective assistance of counsel cases simply don't apply. If the Court has no other questions about the Rule 60B relief, I'll move on. With respect to the continuance, there is an abuse of discretion standard for review. This Court can affirm on any basis in the record, first, there was a procedural problem with the motion, or with the request. It was not a noticed motion. There was no opportunity, therefore, for Northwest to respond. To the extent Mr. Muchs claims in his reply brief that Northwest waived any argument because the motion wasn't noticed, Northwest didn't get that opportunity to respond below. There was no waiver at all. But the defects appear on the face of his papers. Apart from the fact that this motion wasn't, or this request wasn't properly made as a noticed motion, as the Court points out, even the appellate brief does not show or explain specific facts that Mr. Muchs expected to obtain to defeat the summary judgment motion. I am curious, why did Northwest Airlines wait until October to disclose so many documents? I think there were over 1,500 documents that were given to the plaintiff at that point in time. And I would note, first, as Mr. Muchs himself points out, most of those or many of those were duplicates. A lot of them were simply manuals. We didn't have the opportunity to put the fact that there were manuals in the record. At the end of the day, when Mr. Muchs submitted the declaration, he identified a sum total of about 20 pages. He didn't show why or how those pages precluded summary judgment. He didn't say he didn't have time to review because it's less than a box of documents. It's 6 weeks before the summary judgment motion at that point. He clearly did review them because he pulled out 20 pages he said were new. Ten of those pages had to do with an issue he raised at the arbitration, so they weren't new. And then as to remaining pages, they were largely irrelevant. And summarized in his papers below, he distorted the content by claiming in one instance that a flight attendant was expressing mixed feelings about what happened with Mr. Muchs. And what he said was that his conduct was almost ridiculous and that she had mixed feelings only to the extent she'd want to talk to him first. So he's pointing out 20 pages total, 6 weeks, that he got 6 weeks before the oppositions do. He's not pointing out any facts that come from them that could defeat summary judgment. He's not accurately portraying what they say to the court. And those distinctions can be seen as another example. He claimed that this 20-page letter he wrote to the passenger's employer, he complained that it was similar to a letter of apology, that there was an e-mail Northwest was sending about considering whether he could write a letter of apology. That's one of the pages of new documents. And I would request that the Court review the letter that Mr. Muchs sent to the passenger's employer. It's on page 153 to 174. It explains to the passenger's employer how the employee was unruly. The passenger was – would hopefully not repeat this conduct again. It purported to copy five Northwest officials in order to make it appear that Northwest management had approved Mr. Muchs sending this letter, this particular letter lambasting the flight attendant to his employer. When Mr. Muchs admitted at deposition, he did no such thing. So, in essence, further, Mr. Muchs doesn't say what he did in diligence to obtain any of these documents earlier. So there is no specific fact in any of those documents Mr. Muchs identified that can defeat summary judgment. He simply didn't meet the burden there. Furthermore, as to his own diligence, even here today, Mr. Muchs is referring to having identified witnesses. I've looked through the papers. I don't see the identification of any witnesses other than Edmondson, who was deposed, Ms. Rasmussen, who was deposed. There's only one other person who's Anita Ashford. And what Mr. Muchs claims Anita Ashford would have testified to is exactly what he got a declaration from Jesse Velez to say. So that would just be cumulative. So there's no prejudice at all from the discovery plan. Mr. Muchs didn't show any diligence as to what he did on the face of his papers. He doesn't say why he didn't depose these witnesses earlier. He, in fact, did have two witnesses who he cross-examined at arbitration, Ms. Edmondson, Ms. Rasmussen and Mr. Edmondson, and then deposed. And his view of diligence in his appellate brief is basically, well, Northwest filed a motion for summary judgment and five or six days later I filed a request for continuance. That is not the standard for diligence under the law. The standard for diligence is that the plaintiff has to show what he did to pursue these matters beforehand. So none of the legal standards are met on the face of Mr. Muchs's brief. There's no prejudice. The brief was not properly noticed to motion. There are numerous bases in the record for the court, the district court, to have denied this request, this improper request outright. I would want to go back just for one moment to some inadequacies Mr. Muchs raised with respect to the 60B motion in terms of what his counsel had done. With respect to the arbitration, as an example, while Mr. Muchs seeks to blame his counsel for that result, the arbitration panel in that decision actually found against Mr. Muchs in part because of its decision that he dissembled and lied under oath. And that's expressly in the decision as well. Many of the years of litigation that prior counsel went through was there were tactical decisions that Mr. Muchs may not have agreed with after the fact, but I don't think that there's any abuse of discretion in the district court finding three years of representation of defense in an arbitration of taking and defending depositions constitutes gross negligence or extraordinary circumstances. I did want to turn next to the merits of this. Let me ask you about that, by the way. Now, district court did sort of make a finding, didn't it, that there was no gross negligence, right? That's correct. But it made it in, what, after reviewing the affidavits and there was no hearing. I mean evidentiary hearing on it, right? That's correct. There was no evidentiary hearing. Should we consider that as a, you know, finding of fact that's, you know, entitled to clear error or deference? I think yes. I think that there are three different, on the Rule 60b appeal, there are three different issues that should be reviewed for abuse of discretion. Was there extraordinary circumstances here? And as already addressed, under the case law there were not. Does Mr. Mewes bear no fault here? I think also as already addressed, Mr. Mewes does in fact, and it was within the Court's discretion to find Mr. Mewes does bear fault. He selected this counsel. There is a number of cases cited in the briefs that address that issue. And then finally, is there any gross negligence by his counsel? And that's also for an abuse of discretion. I think at each, at many stages of this, what his counsel did can be seen as a tactical decision. In fact, one of the things Mr. Mewes complained about in his largely objectionable declaration, largely admissible declaration, which Northwest objected to below, he complained that Northwest, that his attorneys didn't pursue union assistance. Northwest submitted the declaration of the union, the former union head, Robert Kreb, who said that the union had decided two years before his lawyers asked not to fund the arbitration and not to assist. The union was in fact defunct at that point. I'm not sure how Mr. Mewes can view that as some kind of gross negligence when there was nowhere else to go. The union had decided before they were ever involved it wasn't going to assist Mr. Mewes in that. So a lot of the issues Mr. Mewes is complaining about are both, you know, clouded through his lens and really nonissues. And I think the evidence in the record on that is clear. Finally, on the actual summary judgment merits, I think Mr. Mewes did make clear that there is no substantive argument here, as he himself just admitted, and there was nothing in the reply brief, just one sentence in the opening paper, beyond his claim that the district court abused its discretion in not granting a continuance. The Ninth Circuit authority is clear that there has to be a distinct and separate argument to raise an issue. There's no de novo review here because Mr. Mewes raised nothing separate apart from the continuance. On the merits of the motion, his brief includes no error identified in the statement of issues other than to say, did the district court err in granting summary judgment in light of the fact it denied the continuance? Well, that's the continuance. There is no summary of argument. There's no citation of law. There's no citation of facts to the record. All of these are required. The judge, the court, the panel cannot manufacture an argument on the merits for Mr. Mewes. Well, it may be even easier to resolve the issue by saying there's been nothing identified wrong with the summary judgment. I don't know if we have to get the waiver of the issue. Even if the issue is identified, there's nothing to persuade us differently. Thank you. That's correct. That is the northwest view. If the panel has no further questions, I will allow Mr. Mewes to proceed. Thank you for the argument. Mr. Steiner, I gave you a minute. One minute, Your Honor. Thank you. Three points I'd like to make. Going back to the Rule 60, I'd like to just point out that the Lau case that did allow for reversal, what happened was there was a – the lawyer did not do a Rule 26 disclosure. He did not meet and confer. He did not attend a conference by the court. And that was sufficient for the court to find that it was gross negligence. There was a default, but that was sufficient, just those three things. He then lied to his client about he was still continuing. Well, wouldn't you say that was sufficient? I mean, that record amounts to the fact that after he filed the case, he didn't do a thing. He did nothing, right? Except lie to his client, yes. It was a 41B dismissal, so it was a total absence of doing anything, which is not this case. Well, we're saying that here they didn't meet the issues at all. They went on their own merry way, but they didn't meet the issues. For my time. Thank you very much. We thank both counsel for your helpful arguments. The case just argued is submitted. The final case on today's argument calendar is Sell v. Nationwide Mutual Insurance. Thank you very much.
judges: Tashima, Clifton, Murguia